Carol FRAZIER, Individually, and as Executor of the Estate of Sallie M. Stables, and Sherry Lowe, Plaintiffs,

v.

STATE FARM FIRE AND CASUALTY COMPANY, Defendant.

Civil Action No. 96–0457–R.

United States District Court,
W.D. Virginia,
Roanoke Division.

March 19, 1997.

Randall Bertron Campbell, Roanoke, VA, for plaintiffs.

Phillip V. Anderson, Roanoke, VA, for defendant.

## ORDER

CONRAD, United States Magistrate Judge.

In accordance with the written Memorandum Opinion entered this day, it is hereby

## ADJUDGED AND ORDERED

that the defendant's motion for summary judgment, brought pursuant to Rule 56 of the Federal Rules of Civil Procedure, shall be and hereby is GRANTED and that this action is stricken from the active docket of this court.

The Clerk is directed to send a certified copy of this order to counsel for both parties.

## MEMORANDUM OPINION

Plaintiffs Carol Frazier and Sherry Lowe originally filed this civil action as a Motion for Judgment in the Circuit Court for Giles County, Virginia.[1] On May 13, 1996, the defendant, State Farm Fire and Casualty Company ("State Farm"), removed the action to this court pursuant to 27 U.S.C. § 1441 *et seq.* Plaintiffs allege in their complaint that State Farm breached the terms of a homeowner's insurance policy issued to Mrs. Stables when it refused to pay a claim filed by the plaintiffs on behalf of Stables' estate after the subject residence was damaged by a fire. Plaintiffs seek monetary damages, costs and attorney's fees in the amount of $50,000. The case is before the undersigned United States Magistrate Judge pursuant to the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

State Farm has filed a motion for summary judgment. State Farm argues that the facts of the case support a finding, as a matter of law, that it may rely on the vacancy exclusion clause in plaintiffs' insurance policy to deny the plaintiffs' coverage. By contrast, plaintiffs contend that State Farm should be estopped from relying on the vacancy exclusion clause to deny plaintiffs coverage under the policy because State Farm's agent knew or should have known, based on an October 10, 1995 conversation with plaintiff Frazier, that the subject residence was vacant. State Farm maintains that the doctrine of estoppel, as established under Virginia law, has no application to the facts of the present case because its agent did not have actual knowledge that the subject residence was vacant. A hearing on defendant's motion was conducted on February 5, 1997. State Farm's motion for summary judgment is now ripe for disposition.

### I.

The facts of this case are not disputed. Prior to her death, Mrs. Stables purchased a homeowner's policy from State Farm insuring her residence. Mrs. Stables died testate on July 19, 1995 and bequeathed the insured residence, along with all of its contents and personalty, to plaintiffs Frazier and Lowe. Following Stables' death, the plaintiffs contracted with Dan Hines of the Colonial Auction Company ("Colonial") to remove and auction the contents of the residence. Hines completed the removal of the contents of the residence on or before September 18, 1995, with the exception of a rug, a gas stove, some mattresses and the window curtains. Plaintiffs also contracted with Hines to sell the residence and real estate at auction. While Hines originally scheduled the auction of house's contents for October 6, 1995, the sale was postponed for several weeks until the end of October or the beginning of November.

On October 10, 1995, plaintiff Frazier met with Ben Wheeler, agent for State Farm, at his office in Narrows, Virginia. Frazier

1. Plaintiff Frazier brings this suit both in her individual capacity and as the executor of the Estate of her mother, Sallie M. Stables.

claims that she met with Wheeler in order to ascertain when the insurance coverage on her mother's house would expire, whether any premium payments were due, and whether she needed to change the policy from her mother's name to her own. Frazier added that, during their meeting, she informed Wheeler that she was in the process of arranging to sell the residence at auction. Frazier also told Wheeler that the residence was no longer being occupied though she and her family stopped by the house almost daily.

In response to Frazier's queries, Frazier claims that Wheeler advised her to keep the insurance policy in her mother's name. In addition, Wheeler informed Frazier that she could purchase a six month extension of the existing policy in order to maintain coverage until she was able to sell the house. Finally, Frazier alleges that Wheeler assured her, with regard to the insurance coverage on the house, that "everything would be okay." Frazier at 42.

On October 18, 1995, the insured residence was damaged by a fire. The parties do not dispute the finding by the Virginia State Police, and other investigators, that vandals set the fire intentionally. The fire severely damaged the residence. Following the fire, on November 16, 1995, plaintiffs submitted a claim for the loss under their mother's insurance policy in the amount of $20,200. State Farm denied plaintiffs' claim in a letter dated February 27, 1996, stating that the insurance policy for the residence excluded coverage for damage caused by "vandalism and malicious mischief" where the residence had been "vacant for more than thirty consecutive days" immediately prior to the loss.

## II.

Though the parties do dispute in their pleadings whether the residence was properly considered vacant for the requisite period of time prior to the fire, the parties did not argue this issue at hearing. Nevertheless, the court will address, briefly, the question of whether the insured residence was properly considered to be vacant.

■ State Farm asserts in its pleading that it considered the house vacant as of August 22, 1995, the date that the plaintiffs signed the contract to have Colonial remove all of the contents from the house and sell them at auction. The court has some doubt as to whether the residence could properly be considered vacant as of this date since Colonial did not immediately remove any items from the house. However, Daniel Hines, agent for Colonial, asserts in his affidavit that he had removed all of the contents of the residence by September 18, 1995, with the exception of a rug, some mattresses, the window curtains and a gas range. State Farm alleges, at the very least, that the residence was properly considered vacant as of the 18th. Consistent with the authorities cited by the defendant, the court finds that the residence was properly considered vacant as of this date.[2] Accordingly, the court finds and concludes that the residence was vacant for thirty-one consecutive days as of October 18, 1995, the date of the fire, one day more than that required to trigger the policy's vacancy exclusion clause.

■ In addition to showing that the insured premises were vacant, State Farm must also establish that the loss was caused by vandalism in order for the vacancy exclusion clause to apply. The court notes that the parties do not dispute the finding that the fire was intentionally set and that such a cause would qualify as vandalism under the policy in question. Accordingly, the court finds the defendant has demonstrated the facts necessary to support application of the exclusion.

Thus, the only remaining issue before the court is whether the defendant can be estopped from exercising the policy exclusion based on the fact that Wheeler, the defendant's agent, was informed by Frazier, prior

---

2. See *Watertown Fire Ins. Co. v. Cherry,* 84 Va. 72, 75–76, 3 S.E. 876 (1887); *Catalina Enterprises, Inc. v. Hartford Fire Ins. Co.,* 67 F.3d 63 (4th Cir.1995) (applying Maryland law); *American Mut. Fire Ins. Co. v. Durrence,* 872 F.2d 378 (11th Cir.1989); *Myers v. Merrimack Mut. Fire Ins. Co.,* 788 F.2d 468, 470–72 (7th Cir.1986); *Knight v. USF & G Co.,* 123 Ga.App. 833, 182 S.E.2d 693 (1971); *Rainwater v. Maryland Casualty Co.,* 252 S.C. 370, 166 S.E.2d 546 (1969); *Knoff v. USF & G Co.,* 447 S.W.2d 497 (Tex.Civ.App.1969)).

to the fire, that the residence was vacant and that it would remain vacant until it was sold at auction. The defendant alleges that the policy exclusion is fully applicable and, therefore, the loss caused by the fire is not covered by the policy. By contrast, plaintiffs contend that the question of Wheeler's knowledge with regard to the vacant status of the residence is a material and disputed issue of fact which cannot be resolved by the court pursuant to a motion for summary judgment.

Upon motion for summary judgment, the court must view the facts, and the inferences to be drawn from those facts, in the light most favorable to the party opposing the motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355 (4th Cir.1985). Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). However, "[t]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

When a motion for summary judgment is made and properly supported by affidavits, depositions, or answers to interrogatories, the adverse party may not rest on the mere allegations or denials of the adverse party's pleadings. Instead, the adverse party must respond by affidavits or otherwise and present specific facts showing that there is a genuine issue of disputed fact for trial. Fed. R.Civ.P. 56(e). If the adverse party fails to show a genuine issue of fact, summary judgment, if appropriate, may be entered against the adverse party.

■ Because the insurance policy in question was signed and executed in Virginia, this court's interpretation of the policy is governed by Virginia substantive law. *See National Indep. Coal Operators Ass'n, Inc. v. Old Republic Ins. Co.*, 544 F.Supp. 520, 525 (W.D.Va.1982) (citing *Woodson v. Celina Mutual Ins. Co.*, 211 Va. 423, 177 S.E.2d 610, 613 (1970)).

■ Both parties cite the decision in *Ruffin v. United States Insurance Company*, 208 Va. 463, 158 S.E.2d 672 (1968) as stating the general rule in Virginia which is relevant to the present case. In *Ruffin*, the Supreme Court of Virginia addressed a claim that the defendant insurance company should be estopped from denying coverage based on an occupancy clause in the policy because the defendant's agent was aware that the premises were vacant and unoccupied at the time that the policy was renegotiated. The Court noted the longstanding rule in Virginia that "an insurance company cannot rely on a provision of its policy to defeat coverage if the facts making the provision operative were known to the company when it issued the policy." *Id.* 158 S.E.2d at 673–74. Upon review of the facts before it, however, the Court determined that, while the defendant's agent did have knowledge that the insured premises were vacant on the day that the policy was renegotiated, the agent knew only that it was possible that the premises would remain unoccupied in the future. *Id.* 158 S.E.2d at 674. Further, the Court found that the agent did not say anything to the plaintiff which might suggest that the defendant would not rely on the occupancy clause should it be triggered in the future. Accordingly, the Court concluded that the defendant insurance company was not estopped from relying on the exclusion clause of the policy.

After reviewing plaintiff Frazier's testimony at her deposition, and accepting her characterization of the facts at issue as true, this court concludes as a matter of law that Frazier's comments to Wheeler were not such as to put him on actual notice that the residence was vacant or that it would remain vacant in the future. According to her deposition testimony, Frazier told Wheeler only that she had made arrangements to auction off the insured residence. Frazier at 37. She did not mention that she had also contracted to auction the contents of the house or that the contents were presently being removed pursuant to such a contract. The fact that Wheeler knew that Frazier was planning to sell the residence does not necessarily suggest that the house was vacant or that it would become vacant prior to the sale.

Thus, Frazier cannot rely on these comments to show that Wheeler knew that the insured residence was vacant.

Even assuming that Wheeler did infer from Frazier's comments that the contents of the insured premises were going to be removed prior to the sale of the house, Wheeler still would not have known when the premises were to become vacant. Frazier admitted at deposition that she was not sure whether she told Wheeler when the auction of the house was scheduled to be held. Frazier at 37. Thus, at best, Wheeler would have known only that the house was to be sold at some point in the future and that it would be vacant at some point prior to the sale. As the Supreme Court of Virginia held in *Ruffin,* an agent's knowledge of the "possibility" that the insured premises will become vacant is not sufficient to estop the defendant insurance company from relying on a vacancy clause. *See Ruffin, supra.*

Plaintiffs argue that the facts in the present matter are more analogous to those considered by the Supreme Court of Virginia in *Maryland Casualty Company v. Craig,* 213 Va. 660, 194 S.E.2d 729 (1973) than those in *Ruffin, supra.* In *Maryland Casualty,* the Court considered whether an insurance company should be estopped from relying on a policy exclusion clause to deny coverage following a loss to the insured premises because of the conduct of the company's sub-agent. The evidence in the case proved that the sub-agent had actual knowledge that the premises to be insured were vacant at the time the policy was negotiated and that it would remain vacant throughout the period in which the policy would be applicable. *Maryland Casualty,* 194 S.E.2d at 732. Further, through his discussions with the beneficiaries of the policy, the sub-agent also led the beneficiaries to believe that a vacancy clause contained in the policy would not be relied upon. *Id.* 194 S.E.2d at 733. Based upon these findings, the Court held that the insurance company could not subsequently rely on the terms of the vacancy provision to deny coverage. *Id.*

Contrary to the plaintiffs' assertion, the court does not find the facts in the present matter analogous to those presented in *Ma-*

*ryland Casualty.* As discussed above, at best, agent Wheeler may have had inferential knowledge that the residence was to become vacant at some point in the future. Based on the evidence presented, however, the court cannot find any factual basis for the inference that he had actual knowledge that the residence was vacant and that it would remain vacant indefinitely when he spoke with plaintiff Frazier.

■ Plaintiff, nevertheless, points out that, at the close of their October 10 meeting, Wheeler allegedly told Frazier that "everything would be okay," presumably, in reference to plaintiffs' insurance policy on the subject residence. Plaintiffs assert that State Farm should be bound by Wheeler's comment and that the company should not be permitted to deny the plaintiffs' coverage based upon the fact that the house was vacant at the time of the fire. Under Virginia law, in order to for the doctrine of estoppel to apply, a party must show the following:

(1) [t]here must have been a false representation or concealment of a material fact; (2) the representation must have been made *with knowledge of the facts;* (3) the party to whom [the representation] was made must have been ignorant of the truth of the matter; (4) [the representation] must have been made *with the intention that the other party should act upon it;* and (5) the other party must have been induced to act upon it.

*Coleman v. Nationwide Life Ins. Co.,* 211 Va. 579, 582–83, 179 S.E.2d 466 (1971) (emphasis added).

Assuming that Wheeler did offer such general words of reassurance, the court finds that Wheeler's comment does not establish a basis for applying the doctrine of estoppel. To begin with, as discussed above, the court has already concluded as a matter of law that Wheeler did not have actual knowledge, based upon his October 18, 1995 conversation with Frazier, that the subject residence was vacant. Thus, the plaintiffs cannot satisfy the second element of estoppel as provided by the Supreme Court of Virginia in *Coleman. See also Ruffin, supra.* Having concluded that Wheeler did not have knowledge that the subject residence was vacant, the

court concludes, necessarily, that Wheeler could not have intended to release plaintiffs from the vacancy exclusion clause because in his mind, the clause had not been triggered. Thus, the plaintiffs are unable to satisfy the fourth element of estoppel as provided in *Coleman.* Accordingly, the court concludes that State Farm cannot be estopped from relying on the vacancy exclusion clause based upon Wheeler's statement to plaintiff Frazier.

Plaintiffs also cite the decision in *Georgia Home Ins. v. Kinnier,* 69 Va. (28 Gratt.) 88 (1877) in support of their position. In *Georgia Home,* the defendant agent offered the plaintiff specific assurances that the insured premises would be covered in the event of fire. 69 Va. at 107. Based on these circumstances, the Supreme Court of Virginia held that the defendant insurance company was estopped from denying coverage after the insured premises were damaged by fire. *Id.* This court does not find the facts in *Georgia Home* to be analogous to the present matter. Wheeler's assurances were general at best, and cannot be interpreted as having specifically released plaintiffs from application of the vacancy clause, or waived State Farm's right to rely upon the clause. Accordingly, the court finds *Georgia Home* inapposite to the present matter.

■ Finally, the court notes that during the hearing, the parties discussed whether State Farm's agent had a duty to make further inquiries about the vacant status of the insured premises based upon the general comments of the plaintiff. Courts in other jurisdictions have held that the agent of an insurance company has an affirmative duty to inquire about the status or condition of the insured premises where it appears that such a condition might affect the status of existing coverage. *See, e.g., Roberts v. Maine Bonding & Casualty Company,* 404 A.2d 238 (Me.

1979). While this court agrees that the rationale of this line of cases is compelling, the court's research leads to the conclusion that the Supreme Court of Virginia has not imposed upon an insurance company any such a duty. Furthermore, this court is unaware of any opinion of the Supreme Court of Virginia which might suggest that such an affirmative duty exists under Virginia law.[3] Accordingly, the court concludes that agent Wheeler did not have an affirmative duty to make further inquiries with the plaintiffs about the possible vacant status of the insured residence.

For the foregoing reasons, the court concludes that State Farm acted properly when it asserted the vacancy exclusion clause in the plaintiffs' insurance policy to deny coverage for the losses sustained as a result of the fire on October 18, 1995. Furthermore, the court concludes that State Farm is not estopped from relying upon the vacancy exclusion clause to deny coverage because the company's agent did not have knowledge, based upon his conversation with plaintiff Frazier, that the insured premises were vacant. Accordingly, defendant's motion for summary judgment will be granted and judgment for the defendant will be entered as a matter of law.

The Clerk is directed to send a certified copy of this Memorandum Opinion to counsel for both parties.

---

3. Quite to the contrary, the court finds that had the Supreme Court of Virginia intended to impose such a duty on the agents of insurance companies, the circumstances in *Ruffin* would have presented the ideal situation in which to do so. As discussed above, unlike the facts in the present matter, in *Ruffin,* it was undisputed that the insurance agent had actual knowledge that the insured premises were vacant and that it was possible that the premises would remain vacant in the future. Nevertheless, the Supreme Court held that, absent a finding that the agent had knowledge of facts which would actually trigger the vacancy clause (in that case, that the insured premises were vacant for ninety consecutive days), the insurance company could not be estopped from relying on the clause. *See Ruffin, supra.*