FRANK E. SPAULDING

*vs.*

YORK COUNTY MUTUAL FIRE INSURANCE COMPANY.

Opinion.     February 21, 1930.

*Albert E. Verrill*, for plaintiff.
*Clifford E. McGlauflin*, for defendant.

SITTING: DEASY, C. J., DUNN, STURGIS, BARNES, PATTANGALL, FARRINGTON, JJ.

PATTANGALL, J.    On exceptions and motion. Assumpsit to recover damage by fire under insurance policy. Plea general issue

with brief statement setting up as special matter of defense that under the terms of the policy, the policy should be void "if the insured now has or shall hereafter make any other insurance on the said property without the assent in writing or in print of the company." Verdict for plaintiff.

It is admitted that at the time the policy in controversy was issued, and at the time the insured property was totally destroyed by fire, the plaintiff had insurance on the same, additional to that claimed in this suit, and that the defendant had not assented in writing or in print to the carrying of such insurance and did not know of its existence.

The property which was burned was purchased by plaintiff in 1922, at which time it was insured by defendant for $2,000. A fair inference from the evidence is that there was no other insurance on the property at that time. The policy then in existence expired in 1924, was renewed for a term of three years and again renewed for three years on July 19, 1927. The fire occurred September 6, 1928.

Shortly before the last renewal, plaintiff placed additional insurance aggregating $2,000, the amount being divided between two companies and negotiated through agencies having no connection with that through which this policy was purchased.

Just prior to July 19, 1927, plaintiff received notice from J. P. Hutchinson & Co., defendant's agent, that the policy then existing was about to expire, and went to the agent's office for the purpose of renewing same. Application in writing was necessary and having no blank applications on hand, the agent agreed to procure one and mail same to plaintiff, which was done. The application was enclosed in a letter:

"July 12, 1927

Frank E. Spaulding

Dear Sir: Please sign the enclosed application for renewing the fire insurance on your buildings which will expire July 19th. Return it to us.

Sign twice where marked x.

Yours truly,
J. P. Hutchinson & Co."

The enclosure was a printed form which contained approximately one thousand words and included twenty-four questions to be answered by the applicant, one of which was "Is there other insurance on this property?" and another, "If other insurance, give companies, items and amounts."

None of the questions was answered by plaintiff. Apparently the agent did not expect it and plaintiff so understood. He followed literally the instructions contained in the letter, signed where indicated and returned the application to agent who filled in answers to eleven of the questions, leaving thirteen unanswered, among which were the two above quoted.

A policy was issued but was not delivered to plaintiff. In accordance with his instructions, it was forwarded to Federal Land Bank, his mortgagee.

The application was made a part of the policy by reference. In the policy, the words "No other insurance" appear. These words were necessarily written in by an agent of defendant, plaintiff never having seen the document.

It is not claimed that plaintiff purposely, wilfully or fraudulently withheld from defendant information concerning his insurance in other companies nor is there any evidence upon which such a claim could be based or such a conclusion reached. Neither actual misrepresentation nor fraudulent concealment is charged. Defense rests squarely and confidently on the fact that the contract contained the explicit statement that "This policy shall be void . . . if the insured now has or shall hereafter make any other insurance on the property in question without the assent in writing or in print of the company."

In addition to this principal defense upon which defendant bases his general motion for a new trial, certain exceptions, seven in number, are relied upon. The first relates to the refusal of the presiding Justice to permit defendant to file a demurrer to the counter brief statement filed by plaintiff. The record shows that after plaintiff's counsel had begun his opening statement to the jury, it was found that defendant's pleadings had not been filed. Defendant was then given time to prepare and file same and plaintiff after joining added a counter brief statement, to which defendant desired to demur. The presiding Justice declined to allow further delay in the

proceedings for that purpose, to which ruling defendant excepted.

The counter brief statement set out certain matters which defendant deemed immaterial and inadmissible and which might, very properly, under ordinary circumstances, have been brought before the court on demurrer. Demurrer will lie to a counter brief statement. But defendant was in no way aggrieved by the ruling of which it complains. Its remaining exceptions, relating to the admission of testimony in support of allegations contained in the counter brief statement, raise exactly the same issues which would have been raised by its demurrer.

The second, third, fifth, sixth and seventh exceptions are to the admission of evidence relating to the negotiations between plaintiff and defendant's agent prior to the renewal of the policy, involving the procurement of the application, its signing and filling out.

It is argued that these matters were immaterial and that the evidence violated the parol evidence rule. The questions involved were before this court in *Marston* v. *Insurance Co.*, 89 Me., 266, and decided contrary to the view argued by defendant. We have no hesitation in affirming that carefully considered and well reasoned decision.

The fourth exception is to the admission of the application for insurance. Defendant's brief states that "it is no part of the contract." But the record contradicts the assertion. As has already been noted, the application is incorporated in the policy by direct reference and specifically made a part thereof. It was not only admissible but plaintiff was obliged to offer it as part of his *prima facie* case. Defendant takes nothing by this exception.

The case, therefore, is reduced to the simple proposition whether or not, on the facts submitted, under appropriate instructions as to the law (for no exceptions were taken to the charge of the presiding Justice) a jury was justified in finding for the plaintiff.

Defendant issued the policy, although the application was silent as to the existence or non-existence of additional insurance. Under the circumstances, defendant has no complaint because of plaintiff's failure to answer the questions in the application which would have revealed the true condition of affairs. By accepting and acting upon the application as it stood, defendant waived its right to have the questions answered.

"The issuing of a policy on an application which without fraud contains no answer to certain questions is a waiver to those questions." 1 May Ins., 4th Ed., Sec. 166.

"An insurer, by receiving an application for life insurance with questions therein contained partially answered and issuing a policy thereon, thereby waives the imperfections in the answers and renders the omission to answer more fully immaterial," *Marston* v. *Kennebec Mutual Life Insurance Co.*, 89 Me., 266, and *a fortiori* the same is true where the insurer accepts an application containing questions unanswered. *Carson* v. *Jersey City Fire Insurance Co.* (N. J. L.), 39 Am. Rep., 584; *Dayton Insurance Company* v. *Kelley* (Ohio St.), 15 Am. Rep., 612.

"If a question in the application is not answered at all or if the answer is not false in any respect but upon its face is only incomplete, there is no breach of warranty, provided the insurer accepts the application without objection, since if not satisfied the company should demand fuller information." Richards Ins. Law, 3rd Ed., Sec. 113.

"The company did not elect to require an answer to the question. On the contrary, it issued the policy with that evasion appearing in the medical examination. If the answer was good enough when the company desired to collect premiums from the applicant, it ought to be good enough when the company is called upon to pay." *Peterson* v. *Manhattan Life Insurance Company* (Ill.), 91 N. E., 471; *Phoenix Insurance Company* v. *Raddin*, 120 U. S., 183.

"If the insurers desired more exact information, other questions should have been put accordingly. The fact that one question was unanswered is immaterial. In fact, many questions were not answered. The company, by consenting to make the policy upon the application as it was, waived all claims to further answers." *Hall* v. *People's Mutual Fire Insurance Co.*, 6 Gray (Mass.), 190.

"When the application is filled out by the agent from his own knowledge, no information being sought from the insured who signs the application in blank or without reading it, relying on the agent's good faith and assumption of knowledge, the false statements are the fault of the company through its agent and the insured cannot be called upon to bear the consequences." Cooley Briefs on Insurance Law, Vol. 3, Page 2558.

"The insured is not chargeable with such negligence as will render him liable for false answers inserted by the agent merely because he signed the application in blank and trusted to the agent to fill it out or because he signed an application filled out by the agent without reading it." *Ibid.*, Vol. 3, Page 2572.

The act of the agent who undertook to fill out the application and who omitted to answer the questions as to other insurance was the act of defendant and by receiving the application in this incomplete form and issuing its policy based thereon, defendant waived its right to require plaintiff to furnish the information.

The act of the agent in inserting in the policy the words "No other insurance" was the act of defendant for which plaintiff was in no wise responsible.

"Omissions and misrepresentations known to the agent shall be regarded as known by the company and waived by it as if noted in the policy." Sec. 119, Chap. 53, R. S. (1916.)

"The case discloses that the plaintiff placed full reliance on the agent and did just what he directed and the agent did the rest. If there was mistake or misrepresentation, it is not shown to have been the act of the plaintiff or that the same was specially authorized or consented to by her. The act of the agent was the act of the defendant." *Maxwell* v. *York Mutual Fire Ins. Co.*, 114 Me., 176.

"The simple purpose of the statute is that those seeking insurance and those afterwards holding policies may as safely deal with the agents, with whom alone they ordinarily transact their business as if they were dealing directly with the companies themselves." *LeBlanc* v. *Standard Ins. Co.*, 114 Me., 6.

The failure of an insurance company to inquire as to the existence of facts which by the terms of its policy avoid the insurance estops the company to object after the issuance of the policy to the applicant's inability to comply with the condition or conditions of the policy in the particulars as to which no inquiry is made, and precludes the insurance company from an avoidance of the policy on the ground of a variation of the conditions thereof in that respect.

The statement that there was no other insurance on the property was a misrepresentation which would have avoided the policy

if made by plaintiff. It was not made by him but by the agent who by virtue of the statute is the company. The company, having made the statement on its own responsibility, is estopped from denying the truth thereof, and having issued its policy on the strength of its own misrepresentation, is bound by the contract just as conclusively as though it had given its consent in writing to the carrying of additional insurance.

*Motion and exceptions overruled.*