Clifton C. ROBERTS et ux.

v.

MAINE BONDING AND CASUALTY COMPANY.

Supreme Judicial Court of Maine.

July 31, 1979.

Nisbet, MacNichol & Ludwig by Francis M. Jackson, III, South Portland (orally), for plaintiffs.

Norman & Hanson by Peter J. DeTroy, III, Portland (orally), for defendant.

Before POMEROY, WERNICK, ARCHIBALD, DELAHANTY, GODFREY, and NICHOLS, JJ.

NICHOLS, Justice.

The Plaintiffs, Clifton C. Roberts and M. Evelyn Roberts, appeal from a judgment entered September 22, 1978, in favor of the Defendant, Maine Bonding and Casualty Company, after a jury-waived trial in Superior Court.

They assert that the presiding justice erred in concluding that the Plaintiffs were required to prove that the Defendant had actual knowledge that the insured property in Hollis would remain vacant beyond thirty days in order to avoid a vacancy exclusion clause in their homeowner's insurance policy issued by the Defendant.

We sustain the appeal.

On August 16, 1977, the insured property was vandalized. Damages amounted to $15,389.88. The Defendant refused to indemnify the Plaintiffs for their loss because the property was vacant at the time of the vandalism.

The Defendant relied upon a clause in their policy which expressly excluded from coverage damage caused:

by vandalism and malicious mischief for glass breakage, if the property covered hereunder had been vacant beyond a period of 30 consecutive days immediately preceding the loss.

It is undisputed that the property was vacant for more than 30 days immediately preceding the loss.

The Plaintiffs vigorously contend, however, that through its agent the Defendant (a) had waived this provision or (b) was estopped to assert it, under the unique circumstances of this case.

In November of 1976 the Plaintiff, M. Evelyn Roberts, had contacted an agent of the Defendant, Charles Tarkinson, requesting the issuance to her and her husband of a homeowner's policy covering this property, which the Plaintiffs had recently purchased. The Plaintiffs had dealt with Tarkinson for a number of years, insuring residential and income-producing property through him.

Because the agent was aware that the Plaintiffs would not be selling their residence in Falmouth, at the initial conference the agent asked if anyone would be living in the house at Hollis. Evelyn Roberts told him that the property was then vacant.

At the trial she testified that she then stated to the agent, "I think my son will be going up there and staying through the winter."

The agent testified, however, that on that occasion she told him that her son "would be occupying the premises this winter." He also stated that she either stated or implied that he would occupy it "almost immediately or in the very near future." The agent concluded that she could not possibly have stated to him that her son "might" be moving to the Hollis property because he knew that a house must be occupied to be eligible for a homeowner's insurance policy.

Notwithstanding this uncertainty concerning occupancy of the property, which uncertainty the Defendant's agent acknowledged, the agent did not pursue the point. It appears that at no time did he alert the Plaintiffs to the fact that occupancy was a condition of insurance coverage.

Shortly after this meeting the agent prepared a memorandum which stated in part, "Her son will be staying there, so it will be occupied at all times." The application for homeowner's insurance which the agent then caused to be submitted to the Defendant stated, "This is a secondary residence for insureds—when they are not staying in home it will be occupied by a member of their family."

It is undisputed that the agent never asked Mrs. Roberts for a specific date when the house would be occupied, nor did he ever tell her that it had to be occupied within thirty days if she and her husband were to be covered.

Due to unforeseeable problems in the plumbing, the premises were uninhabitable, and the son never moved there.

On these facts the presiding justice ordered judgment for the Defendant concluding:

The evidence has failed to prove by a preponderance that the Defendant knew that the premises would be unoccupied for a period in excess of thirty days at the time the policy was issued, therefore, grounds for waiver of a vacancy did not exist.

The central issue on this appeal is whether the Defendant must have had actual knowledge of vacancy for a period in excess of thirty days in order to constitute a waiver of the vacancy clause, or an estoppel to assert the vacancy clause.

The Plaintiffs urge that the Defendant waived that clause by issuance of the policy with knowledge of the then vacancy of the premises. They cite *Zweygardt v. Farmers*

*Mut. Ins. Co.,* 195 Neb. 811, 241 N.W.2d 323 (1976) for what they state to be the majority rule:[1]

> [I]f an insurance company has knowledge through its agent, when a contract of insurance is effected, that the premises are vacant or unoccupied, the issuance of the policy waives any provision as to vacancy or unoccupancy, at least so far as the existing vacancy is concerned. *Id.* at 815, 241 N.W.2d at 325.

Without going so far as to indicate our full approval of that rule, which on occasion may impose an unfair burden of an insurer,[2] we conclude that in the circumstances of this particular case the Defendant may be estopped to assert the vacancy clause notwithstanding its lack of knowledge of the actual vacancy.

Before the doctrine of estoppel may be invoked, the declarations or acts relied upon must have induced the party seeking to enforce an estoppel to do what resulted to his detriment and what he would not otherwise have done. *Martin v. Prudential Ins. Co.,* Me., 389 A.2d 28, 31 (1978). This doctrine should be carefully distinguished from the doctrine of waiver, which is the voluntary and knowing relinquishment of a right. *T. M. Oil Co. v. Barnes,* Me., 402 A.2d 857 (1979).[3]

An estoppel forbids the assertion of the truth by one who has knowingly induced another to believe what is untrue and to act accordingly. While waiver rests upon intention, estoppel rests upon misleading conduct.

Estoppel has been described as a "waiver implied in law," but intention is no part of such a "waiver." Such a waiver is incongruous. It is, in fact, estoppel which applies where the conduct of the insurer has misled the insured into acting on a reasonable belief that the insurer has waived some provision and extended coverage. *Kiernan v. Dutchess County Mut. Ins. Co.,* 150 N.Y. 190, 44 N.E. 698, 699 (1896).[4]

The two elements of estoppel to be proved in the case before us are (1) unreasonable conduct of the insurer which misleads the insured concerning the scope of his coverage and (2) justifiable reliance by the insured upon that conduct of the insurer. *See Providence Washington Ins. Co. v. Stanley,* 403 F.2d 844, 850 (5th Cir. 1968).

Just as where an insurer undertakes to explain the policy to the insured, he must exercise due care therein, *Jefferson Realty of South Dade, Inc., v. Fidelity and Deposit Co. of Maryland,* 410 F.2d 847, 850 (5th Cir. 1969), so where the insurer is actually aware of uncertainty surrounding occupancy of the insured's property, his failure to alert the insured to the requirement of occupancy as a condition of coverage may be determined by the fact finder to be unreasonable conduct, and may be found to have misled the insured as to the scope of coverage under the insurance policy being issued to him.

The reliance necessary for estoppel must be reasonable. *Martinson v. American Family Mut. Ins. Co.,* 63 Wis.2d 14, 216 N.W.2d 34, 38 (1974). Nevertheless, a showing that an insurance agent told the insured that his policy contained full liability coverage may be sufficient to estop the insurance company from relying on an ex-

1. For similar holdings *see also Keller v. Hartford Fire Ins. Co.,* 239 Wis. 354, 300 N.W. 471, 473 (1941); *Stuart v. United States Fire Ins. Co.,* 18 N.C.App. 518, 197 S.E.2d 250 (1973); *Gordon v. St. Paul Fire & Marine Ins. Co.,* 197 Mich. 226, 163 N.W. 956, 960 (1917). *See generally Annot.,* 96 A.L.R. 1259 (1935); 4 R. Anderson, *Couch on Insurance 2d* § 26:288 (1960).

2. *See Ruffin v. United States Fire Ins. Co.,* 208 Va. 463, 158 S.E.2d 672 (1968); *Provident Washington Ins. Co. v. Reese,* 213 Tenn. 355, 373 S.W.2d 613 (1963); *Washington Realty Co.*

*v. American Mut. Fire Ins. Co.,* 252 S.C. 618, 167 S.E.2d 617 (1969).

3. The fact that the presiding justice found no grounds for waiver in this case does not rule out the possibility of grounds for estoppel here.

4. *See also Phoenix Mut. Life Ins. Co. v. Brenckman,* 148 Conn. 391, 171 A.2d 194 (1961); *A. Perley Fitch Co. v. Continental Ins. Co.,* 99 N.H. 1, 104 A.2d 511, 513 (1954); *Seavey v. Erickson,* 244 Minn. 232, 69 N.W.2d 889, 895–96 (1955); 43 Am.Jur.2d Insurance § 1054 (1969).

clusion in the policy to deny coverage. *Bituminous Fire & Marine Ins. Co. v. Izzy Rosen's, Inc.,* 493 F.2d 257, 260 (6th Cir. 1974).

In *Barrette v. Casualty Co. of America,* 79 N.H. 59, 104 A. 126, 127 (1918), the insurance agent informed the insured that the insured's company would be "covered." In holding that a policy exclusion was not effective to bar coverage the New Hampshire Court declared:

> It cannot be said that Dubray was in fault for relying on the agent's representation, or that the ordinary man in his situation would have read the policy to ascertain whether it evidenced the contract he made with the company; and there is no rule of law, written or unwritten, which provides either in terms or by reasonable implication that one who buys insurance is bound by the terms of a policy the company subsequently delivers to him, both when it does and when it does not evidence the contract he made with it. In other words, the evidence warrants the findings that the company was, and that Dubray was not, in fault for his not knowing of the exception in the policy, and these findings warrant the further finding that the company is estopped to deny that it insured Dubray against liability to the plaintiff for the death of her intestate.

*See also Spaulding v. York County Mut. Fire Ins. Co.,* 128 Me. 512, 518, 149 A. 143 (1930).

Thus the factual issue may be stated as whether, through the Defendant's failure to warn the Plaintiffs that occupancy was a condition of coverage, the Defendant misled the Plaintiffs into the reasonable belief that the existing vacancy would not bar their coverage.

■ The Superior Court, it appears, relied upon an erroneous principle that actual knowledge of vacancy beyond the 30 day period was necessary to charge the Defendant with liability. That is not the requirement.

■ An insurer may be charged with notice of facts which would have been disclosed by an inquiry of ordinary diligence and understanding. *See Washington National Ins. Co. v. Estate of Reginato,* 272 F.Supp. 1016, 1020 (N.D.Cal.1966). Knowledge which is sufficient to lead a prudent person to inquire about a matter, when it could have been ascertained conveniently, constitutes notice of whatever the inquiry would have disclosed and will be regarded as knowledge of the facts. *Columbian Nat. Life Ins. Co. v. Rodgers,* 116 F.2d 705, 707 (10th Cir. 1940).[5]

This is not a case where false information was supplied to the insurer on a facially innocuous application as in *Rutherford v. John Hancock Mut. Life Ins. Co.,* 562 F.2d 290, 293 (4th Cir. 1977), *Tedder v. Union Fidelity Life Ins. Co.,* 436 F.Supp. 847, 850 (E.D.N.C.1977) or *Fireman's Fund Ins. Co. v. Knutsen,* 132 Vt. 383, 324 A.2d 223, 229 (1974).

■ So far as this record discloses, at no time did the Defendant's agent undertake expressly to alert these Plaintiffs to the requirement of occupancy as a condition of coverage. The Superior Court might properly have found as a fact that by the unreasonable conduct of the agent in issuing the homeowner's policy while being aware of the uncertainty surrounding the occupancy of the premises, yet not alerting the Defendants as to the requirement of occupancy, the Defendant misled the Plaintiffs into a reasonable, but erroneous, belief that the homeowner's policy provided insurance protection even if their house in Hollis remained vacant.

Actual knowledge that the premises would be unoccupied or vacant is not essential to effect an estoppel. Knowledge of the uncertainty of occupancy might, under the circumstances of this case, create an

---

5. *See also First Nat. Bank of Manhattan, Kansas v. Modern Woodmen of America,* 486 F.2d 10, 14 (10th Cir. 1973); *First Pennsylvania Banking & Trust Co. v. United States Life Ins.* Co., 421 F.2d 959, 963 (3d Cir. 1969); *Union Ins. Exchange, Inc. v. Gaul,* 393 F.2d 151, 155 (7th Cir. 1968).

affirmative duty to bring to the Plaintiffs' attention the consequences of such a vacancy. Failure of its agent to discharge such a duty and justifiable reliance upon the agent's conduct could estop the Defendant from asserting the clause to deny coverage to the Plaintiffs.

After all, the Plaintiffs sought from the Defendant insurance coverage for their property, and in issuing to them a homeowner's policy the Defendant purported to cover it. If at the time the Defendant was aware of circumstances which might reasonably suggest that the policy issued would not provide coverage to the Plaintiffs, the Defendant could not sit back, accept premiums and then deny its liability after a loss occurs.

The Defendant issued a homeowner's insurance policy to the Plaintiffs, who may have justifiably relied upon the conduct of the Defendant's agent and believed that the policy was effective despite the vacancy. Such reliance on their part would not be unreasonable as a matter of law.

Under the circumstances, we are left with the crucial question of whether the presiding justice would have found that unreasonable conduct of the agent here misled the Plaintiffs into reasonably believing that occupancy was not a prerequisite to coverage under their policy.

This is an issue of fact. Each case of waiver or estoppel must stand on its own facts and be decided on its own peculiar merits. *Benton v. Aetna Cas. & Sur. Co.*, 241 Cal.App.2d 768, 50 Cal.Rptr. 824 (1966). We cannot say as a matter of law that the Defendant is estopped to assert the vacancy clause.

We conclude, however, that the decision of the Superior Court was based upon too narrowly constricted a view of the pertinent law.

Accordingly, the entry must be:

Appeal sustained.

Judgment vacated.

Remanded for further proceedings consistent with the opinion herein.

McKUSICK, C. J., did not sit.