Douglas MATHIEU

v.

**COMMISSIONER OF HUMAN SERVICES.**

Supreme Judicial Court of Maine.

Argued March 9, 1989.
Decided Aug. 1, 1989.

---

Ray R. Pallas (orally), Westbrook, for plaintiff.

Paula J. House, Christopher C. Leighton (orally), Asst. Attys. Gen., Portland, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD and HORNBY, JJ.

CLIFFORD, Justice.

The defendant, the Commissioner of Human Services (Commissioner), appeals from an order of the Superior Court (Cumberland County, *Alexander, J.*) vacating a decision of the Commissioner of Human Services [1] upholding the claim of the Department of Human Services (Department) under 19 M.R.S.A. § 495(1–A) (Supp.1988) against the plaintiff, Douglas Mathieu, for unpaid child support accrued from December 16, 1977 to December 31, 1985.

We reject Mathieu's contention that the Department is estopped from asserting a claim against Mathieu for the unpaid child support accrued under a divorce judgment. Moreover, because we conclude that the Superior Court erroneously held that support payments made by Mathieu in accordance with an order issued under the Uniform Reciprocal Enforcement of Support Act (URESA) complied with the support provisions in the divorce judgment, we vacate the Superior Court judgment and remand for entry of an order affirming the Commissioner as to the amount of arrearage, and for the defendant Department on the issue of estoppel.

Patricia Mathieu and Douglas Mathieu, the parents of a minor child, were divorced in Maine in December 1977. Mrs. Mathieu was awarded custody of their minor child and Mathieu was ordered to pay child support. In September 1979, the District Court (Portland, *Donovan, J.*) amended the child support provisions of the divorce judgment and Mathieu was ordered to pay child support in weekly amounts of at least $40, and increasing depending on his monthly gross income.

Mrs. Mathieu subsequently moved from the State of Maine and attempted to enforce the support obligations against Mathieu through URESA.[2] Mathieu was ordered to pay support according to the terms of URESA court orders entered in

1. The hearing officer made the administrative decision acting on behalf of the Commissioner of Human Services. *See Baffer v. Department of Human Servs.*, 553 A.2d 659, 662 (Me.1989).

2. *See* 19 M.R.S.A. §§ 331–420 (1981 & Supp. 1988). The uniform law is designed to enable a

dependent to initiate a proceeding in the state of his or her domicile to secure support money from a parent or spouse legally liable for support who resides in another state. *Lambrou v. Berna,* 154 Me. 352, 356, 148 A.2d 697 (1959).

Massachusetts in 1980, and in Maine, in Superior Court (Cumberland County, *McKinley, J.*) in 1982. The 1982 URESA order was entered after agreement by Mathieu and representatives of the Department, and was, by further agreement in 1984 and 1985, continued in effect. Neither order purported to amend the divorce judgment and neither party to the divorce sought directly to further amend the judgment during the time for which arrearage is sought.[3] Mathieu made regular support payments in accordance with the 1982 URESA order, but those payments were less than the payments required under the divorce judgment.

In 1985, the Department, pursuant to 19 M.R.S.A. § 448–A (1981 & Supp.1988),[4] undertook on behalf of Mrs. Mathieu to enforce against Mathieu the support obligations provided for in the divorce judgment. Under 19 M.R.S.A. § 500 (1981 & Supp.1988),[5] the Department sent a Notice of Debt to Mathieu notifying him that under the divorce judgment he owed $7,496.64 in child support arrearage. At Mathieu's request, an administrative hearing was held before a hearing officer. At the hearing, Mathieu contested the Department's calculations as to the amount of his arrearage. In addition, he alleged that Department employees assured him that compliance with the URESA order would satisfy his support obligation under the divorce judgment. He claimed that because he relied to his detriment on those representations, the Department was estopped from attempting to collect from him any difference between what he owed under the divorce judgment and what he actually paid under the URESA order.

Following an initial hearing, the hearing officer determined that the Department had miscalculated the amount of the arrearage. The hearing officer was careful to note that she lacked jurisdiction to adjudicate the issue of estoppel. The Department sent Mathieu a new Notice of Debt and a new hearing was held. The record of the prior hearing was incorporated into the record of the new hearing. At that second hearing, the Department and Mathieu agreed that $3,757.43 was the difference between what Mathieu actually paid under the URESA order and what he would owe in child support arrearage payments under the divorce judgment if his estoppel argument did not prevail. The hearing officer reiterated her lack of jurisdiction to decide the estoppel issue, but at the request of the parties, addressed the issue and found that the evidence relied upon by Mathieu did not establish estoppel.

Mathieu appealed to the Superior Court under 19 M.R.S.A. § 516 (Supp.1988) and M.R.Civ.P. 80C. Mathieu did not move under Rule 80C(e) to have the Superior Court take any additional evidence on the issue of estoppel or on any other issue. The Superior Court vacated the decision of the hearing officer, ruling that Mathieu's compliance with the URESA order constituted compliance with the divorce judgment. This appeal followed.

(Footnote omitted.)

---

**3.** Mathieu did move to amend the divorce judgment in 1987. The support obligation the Department seeks to collect here is for the period from December 16, 1977 to December 31, 1985.

**4.** 19 M.R.S.A. § 448–A(1) (Supp.1988) provides, in pertinent part:

The Department of Human Services may, for a fee, locate absent parents, defend against support reductions, establish support obligations, seek motions to increase support obligations, enforce support obligations and determine paternity on behalf of applicants who are not recipients of public assistance, by actions under any appropriate statute, including, but not limited to, remedies established in subchapter V, to establish and enforce the support obligations. . . .

**5.** 19 M.R.S.A. § 500 (1981 & Supp.1988) provides that prior to taking action to collect a support obligation, the Department must notify the person owing the obligation and provide an administrative hearing for contesting the obligation. Section 500(1)(G) limits the issues that may be contested at the administrative hearing to receipt of public assistance by the responsible parent, uncredited cash payments, the amount of the debt, the accuracy of the terms of the court order as stated in the notice of debt, and the maintenance of any required medical or dental insurance coverage. The hearing officer correctly determined that she had no jurisdiction to determine the issue of estoppel.

Of the two issues litigated by the parties in this case, only one remains in dispute. The first issue, Mathieu's arrearage, the difference between what was to be paid under the divorce judgment and what Mathieu actually paid, was ultimately agreed upon by the parties. The hearing officer correctly determined that she lacked jurisdiction to decide the second issue, i.e., Mathieu's contention that the State was estopped from collecting from him anything over the amounts ordered to be paid in the URESA order.[6]

■ Upon Mathieu's M.R.Civ.P. 80C appeal, the Superior Court did not address estoppel. The court concluded that support payments made by Mathieu under the URESA order complied with the support provisions of the divorce judgment. We disagree. Under 19 M.R.S.A. § 409 (1981), a URESA order does not amend a divorce order unless it specifically purports to do so.[7] In this case, neither the 1982 URESA order issued in Maine, nor the 1980 URESA order issued in Massachusetts purported to amend or supersede the divorce judgment. It was error for the Superior Court to conclude that support payments made under the URESA order complied as a matter of law with the divorce judgment.

■ Although he had the opportunity to move under M.R.Civ.P. 80C(e) that the Superior Court take evidence on the issue of estoppel, Mathieu failed to do so. Instead, on that issue he relied on and is bound by the administrative record taken before the hearing officer. Despite her lack of jurisdiction to decide Mathieu's claim of estoppel, the hearing officer made factual findings at the request of the parties and found the evidence insufficient to establish estoppel. Because the hearing officer did not

have jurisdiction to determine the issue of estoppel, we do not rely on her findings. Our independent review of that record, however, leads us to conclude that Mathieu's evidence as to estoppel is insufficient as a matter of law.[8]

The doctrine of equitable estoppel "bars the assertion of the truth by one whose misleading conduct has induced another to act to his detriment in reliance on what is untrue." *Anderson v. Commissioner of Dep't of Human Servs.*, 489 A.2d 1094, 1099 (Me.1985). Although the application of the doctrine of equitable estoppel is not precluded solely because it is made against a governmental entity, *M.S.A.D. No. 15 v. Raynolds*, 413 A.2d 523, 533 (Me.1980), the doctrine should be sparingly used. *Milliken v. Buswell*, 313 A.2d 111, 119 (Me.1973). As the party asserting estoppel, Mathieu had the burden to demonstrate that he justifiably relied upon affirmative misleading conduct of the Department and was induced to his detriment to do an act that he would not otherwise have done. *Roberts v. Maine Bonding & Casualty Co.*, 404 A.2d 238, 241 (Me.1979). In this case, Mathieu made payments under the URESA order beginning in 1982. The conversations with the Department representatives as to the effect support payments made under the URESA order would have on his obligations under the divorce judgment, on which he alleges he relied to his detriment and on which he bases his claim of estoppel, did not occur until late 1984 or early 1985. At the time of those conversations Mathieu was represented by counsel and knew, or should have known, that the URESA order did not amend the divorce judgment. 19 M.R.S.A. § 409. Mathieu made no effort to further amend the di-

---

**6.** 19 M.R.S.A. § 500(1)(G) lists the subjects that can be contested at an administrative hearing. The equitable issue of estoppel is not one of those subjects. *See supra* note 5.

**7.** 19 M.R.S.A. § 409 (1981) provides in pertinent part:

A support order made by a court in this State pursuant to this Act does not nullify and is not nullified by a support order made by a court in this State pursuant to any other law or by a support order made by a court of any

other state pursuant to a substantially similar Act or any other law, regardless of priority of issuance, unless otherwise specifically provided by the court....

**8.** Because we review the same record the Superior Court would review, and because we find the evidence on estoppel insufficient as a matter of law, remanding to the Superior Court for that court to address Mathieu's claim of equitable estoppel is unnecessary and would serve no purpose.

vorce judgment[9] and does not rely on the actions of the Department for his failure to do so. Viewed in the light most favorable to Mathieu, the record reflects that following those conversations, despite section 409, Mathieu misunderstood that compliance with the URESA order fulfilled his support obligation under the divorce judgment. Such a misunderstanding of the effect of complying with the URESA order is insufficient to support the application of estoppel. *Roberts,* 404 A.2d at 241.

Even assuming that he could reasonably rely on the statements he alleges were made to him, Mathieu cannot ground his estoppel claim on his being misled into making support payments he was legally obligated to make. Moreover, the claim of reliance he does make on appeal that, to his detriment, he misplaced or destroyed financial records after being assured that compliance with the URESA order would mean compliance with the divorce judgment, is not sufficiently supported in the record.[10]

The entry is:

Judgment vacated. Remanded to the Superior Court for entry of judgment affirming the Commissioner as to the amount of arrearage and for the Department on the issue of equitable estoppel.

All concurring.

---

**9.** *See supra* note 3.

**10.** Mathieu claims that because he misplaced or destroyed his financial records he is unable to contest the amount the Department claims he owes under the divorce judgment. He alleges

that this forced him to stipulate to the amount owed. He also argues that it would be a financial hardship to pay $3,757.43 in a lump sum as opposed to his having paid it over a period of time had he not been misled.